**HEACOCK v. KNIESLEY et al.**

No. 12064—Opinion Filed March 4, 1924.

(Syllabus.)

**Frauds, Statute Of—Sufficiency of Writings —Letters and Telegrams.**

A complete contract binding under the statute of frauds may be entered into by letters, telegrams, or other writings between the parties relative to the subject-matter of the contract and so connected with each other that they may be fairly said to constitute one paper relating to the contract, but in order to be sufficient the letters, telegrams, and writings relied upon must, by reference to each other, disclose every material part of a valid contract, and must be signed by the party sought to be charged, must set out the parties, the subject-matter, the price, the description of the property, terms and conditions, and leave nothing to rest in parol.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by O. E. Heacock, against Pete Kniesley and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Green & Pruet, for plaintiff in error.

J. H. Harper, for defendants in error.

NICHOLSON, J. This action was brought by O. E. Heacock, as plaintiff, against Pete Kniesley, as defendant, seeking the specific performance of a contract for the sale of lots 23 and 24, in block 38, in the town of Waurika. Afterwards a supplemental petition was filed, making Harley Ivy and F. P. Duncan defendants.

The plaintiff bases his right of recovery upon a letter written by him to Kniesley, in which he offered to pay the sum of $175 for the property, and a telegram from Kniesley accepting such offer.

The defendant Kniesley did not appear in the cause. The defendants Ivy and Duncan answered, stating that on the 27th day of January, 1920, Kniesley conveyed to Ivy the real estate involved for a consideration of $200: that Ivy paid the consideration therefor and became the purchaser of said property in good faith, without notice of any title or claim of the plaintiff therein: that just prior to the time Ivy entered into a contract to purchase the lots from Kniesley, the plaintiff stated to him that he had an opportunity to purchase the lots, but that he did not want them because the title thereto was defective; that Ivy, relying on the statement that he did not want the lots, purchased the same and paid the consideration therefor; that afterwards he sold and

conveyed the lots to the defendant Duncan; that Duncan purchased the interest of Ivy in good faith, for a valuable consideration, and was the owner thereof, and prayed that the title thereto be quieted in Duncan. A trial resulted in a judgment in favor of the defendants Ivy and Duncan, from which the plaintiff has appealed.

The only inquiry presented which it is necessary to consider is whether or not the evidence shows an enforceable contract between Heacock and Kniesley.

Heacock testified that he had been corresponding with Kniesley in regard to the lots in question for two or three years, and that on or about January 1, 1920, he wrote Kniesley offering him $175 therefor, and inclosed a deed for Kniesley's signature in which the lots were described and he was named as grantee. This letter had been lost and neither it nor a copy thereof could be produced, but Heacock testified to the contents thereof, as follows:

"Q. Will you state the substance of the letter which you wrote Kniesley on or about January 1, 1920, in which you made him an offer to purchase the property in controversy, lots 23 and 24, block 38? A. My recollection is I wrote him I would take those lots at a consideration of $175 net to him, that there would be no commission out of the $175. I asked him to wire me if he accepted. Q. Was anything said about making the First State Bank your agent for the purpose of delivery of the deed and collection of the money? A. I presume I did: I have practically all papers come to that bank. Q. Did you receive a reply to that communication? A. I did. Q. I hand you plaintiff's Exhibit 1 and ask you to state what it is. A. Telegram I received from Mr. Kniesley in reply to my letter wherein he accepted my offer."

The telegram from Kniesley to Heacock reads as follows:

"Western Union Telegram.
                              "29 Collect N. L.
"Received at 16 da
"Detroit Mich 1-15-1920.
"O. E. Heacock, Waurika.

"Your offer accepted with the understanding that you get your com above the sum mentioned. out to have 100 apiece, will mail the deal soon.
                              "Pete Kniesley."

It is a well-established principle of general application that a complete contract binding under the statute of frauds may be entered into by letters, telegrams, or other writings between the parties relative to the subject-matter of the contract, and so connected with each other that they may be fair-

ly said to constitute one paper relating to the contract. Halsell et al. v. Renfrow et al., 14 Okla. 674, 78 Pac. 118; Beckwith v. Talbot, 95 U. S. 496, 5 Otto, 289; Ryan v. United States, 136 U. S. 68; Bibb v. Allen, 149 U. S. 481. But in order to be sufficient, the letters, telegrams, and writings relied upon must by reference to each other disclose every material part of a valid contract, and must be signed by the party sought to be charged; they must set out the parties, the subject-matter, the price, the description of the property, terms and conditions, and leave nothing to rest in parol. Ferguson v. Blackwell, 8 Okla. 489, 58 Pac. 647; Fox v. Easter, 10 Okla. 527, 62 Pac. 283; Halsell v. Renfrow, supra; Bowker v. Linton et al., 69 Okla. 280, 172 Pac. 442.

Do the contents of the letter testified to by Heacock and the telegram from Kniesley measure up to the requirements of a binding contract? We think not. According to Heacock's testimony as to the contents of his letter to Kniesley, he wrote that he would take "those lots at a consideration of $175, net to him". But he does not say that the lots were described in the letter, and we have no means of knowing to what the letter referred, unless we are permitted to take the question of counsel in an effort to supply the description, and if we do this, we merely learn that he is talking about lots 23 and 24, in block 38, but are not advised as to the town, county, or state in which the lots are located. It will be readily seen that the evidence fails to show that the contract contained a sufficient description of the property to satisfy the conditions of the statute of frauds and such contract was therefore unenforceable. Bowker v. Linton, supra: Hartshorn v. Smart, 67 Kan. 543, 73 Pac. 73; Allen v. Kitchen (Idaho) 100 Pac. 1052. The evidence fails in other respects to establish a binding contract, but further comment is unnecessary.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, COCHRAN, BRANSON, and MASON, JJ., concur.