No. 24,788.

BESSIE P. KING et al., *Appellees,* v. CLYDE W. STEPHENS et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. WRITTEN CONTRACT—*Conveyance of Real Property—Description of Property.* A contract for the conveyance of real property is not so indefinite in its description that it cannot be enforced in equity when it purports to convey "the house located at 418 Elm Street, owned by Mary L. Stephens", where the contract also recites that the agreement was made and entered into at Lawrence, Kan. In such case, in the absence of some evidence to the contrary, it should be inferred that the property described in the contract was located in Lawrence, Kan.

2. SAME. An agreement to convey city property described by its street number is sufficiently definite to satisfy the statute of frauds and to justify specific performance, when the identity of the property intended to be conveyed is the subject of no possible dispute.

3. SAME—*Conveyance of City Lots by Mother to Son—Title Became Absolute in Son.* A contract for the conveyance of real estate by a mother to her son, wherein it was stipulated that he should take up his abode in such property, in consideration of which she agreed to give him the property "providing he is living at that time," is not too ambiguous to be enforced, where time of conveyance was not of the essence of the contract. After full performance by the son, it should be construed in equity that the son's title became absolute at a date not later than the day of his mother's death.

4. PLEADING AND PRACTICE—*Rulings on Pleading Not Reviewable.* Rule followed that a trial court's ruling on a pleading is not reviewable unless an appeal is taken thereon within six months.

5. SAME—*Amendments to Pleadings—Judicial Discretion.* Rule followed that the allowance of amendments to pleadings is a matter within the discretion of the trial court.

6. SAME—*Rulings on Evidence Not Reviewable.* Rule followed that errors in the admission or exclusion of evidence are not reviewable unless the party aggrieved thereby presented such matters by motion for a new trial and secured a ruling thereon by the trial court.

King v. Stephens.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed May 12, 1923. Reversed.

*George K. Melvin,* and *R. E. Melvin,* both of Lawrence, for the appellants.
*J. B. Wilson,* of Lawrence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action originated as an administrator's suit to subject the property of the late Mary L. Stephens of Douglas county to the payment of the debts of her estate, but it was expanded into an action to determine the title to her property—a small house and parcel of land in the city of Lawrence.

Clyde W. Stephens, a son of Mary, claimed to be the equitable owner of the property, by virtue of a written contract, viz:

"Exhibit 'A'. This agreement, made and entered into between Mary L. Stephens, party of the first part, and Clyde W. Stephens, party of the second part, Witnesseth:

"Clyde W. Stephens, party of the second part, agrees to live in and occupy the house located at 418 Elm Street owned by Mary L. Stephens, (with exception of one room, which will be occupied by Mary L. Stephens, herself.)

"In consideration of the fulfillment of this agreement, Mary L. Stephens, party of the first part, agrees to give to Clyde W. Stephens the above mentioned property, located at 418 Elm Street, providing he is living at that time.

"This agreement made and entered into at Lawrence, Kansas, this 12th day of February, 1919.

By MARY L. STEPHENS,
*Party of First Part,*
CLYDE W. STEPHENS,
*Party of Second Part."*

The trial court made findings of fact and conclusions of law, viz:

"FINDINGS OF FACT.

"1. The plaintiff, Bessie P. King, is a daughter and one of the heirs at law of . . . Mary L. Stephens, who died intestate, about February, 1920. The defendants, Clyde W. Stephens, Earl Stephens, Atchison Stephens, Giles Stephens and Joe Stephens, are the children of and together with Bessie P. King, are the only heirs at law of the said Mary L. Stephens, deceased.

"2. About September, 1918, the defendant Clyde W. Stephens, with his family, entered into the possession of three rooms in a house located at 418 Elm Street, in the City of Lawrence, Kansas. This house had in it four rooms, and a hallway. The fourth room was at the time that Clyde W. Stephens took possession of the three rooms, as above referred to, occupied by his mother, Mary L. Stephens, and continued to be so occupied by her up until the time of her death.

"3. In February, 1919, the paper introduced in evidence as Exhibit 1, was signed by said Mary L. Stephens, deceased, and the defendant Clyde W. Stephens.

"4. Mary L. Stephens, deceased, was, at the time of the signing of said paper, the owner of a house and the real estate on which it stood, located at 418 Elm Street, Lawrence, Douglas .County, Kansas, and had been for a number of years.

"5. The defendant Clyde W. Stephens, remained in and continued to occupy three rooms in the house located at 418 Elm Street, Lawrence, Kansas, from about September, 1918, to about September, 1920, at which time he vacated and left said house, at the request and at the instance of his mother, the said Mary L. Stephens.

"6. So far as disclosed by the evidence, Mary L. Stephens, deceased, did not own any other real estate from February, 1918, to the time of her death, with the exception of that located at 418 Elm Street, Lawrence, Kansas.

"7. The defendant Clyde W. Stephens extended the gas service in 'the house so as to include two rooms. He also papered two rooms and did some inside painting, and repaired the well curb and fence. The lumber for the repair of the fence was paid for partly by Mary L. Stephens, deceased, and partly by Clyde W. Stephens.

"Conclusions.

"1. The paper referred to in Finding No. 3 is uncertain in its terms and ambiguous to such an extent that no relief can be based thereon.

"2. Under the evidence and facts in the case, the defendant, Clyde W. Stephens, is not entitled to the relief he prays for."

Judgment was entered pursuant thereto, and defendant appeals, contending chiefly that the conclusions of law were erroneous. What purports to be parts of the testimony is set out in the abstract, but no transcript of the record was provided. In such a situation (except by agreement of counsel), it is useless for appellant to talk about the evidence, and a waste of money to print fragmentary parts of it. Without a transcript, the scope of our review is greatly restricted. We have to accept the findings of fact as correct (*Buckwalter v. Henrion,* 111 Kan. 781, 208 Pac. 645), and the only questions we can review are whether the trial court's conclusions of law were correctly deduced from the findings of fact and whether the proper judgment was entered pursuant thereto. When the appellee himself seeks a review of the evidence and rulings thereon, it devolves on him to provide the transcript. (*Hegarty v. Refining Co.,* 110 Kan. 171, 204 Pac. 144.)

Was the contract between mother and son so ambigious and uncertain in its terms as to be unenforcible? With the aid of the other findings of fact, we do not think it was. The mother had but

one piece of property; and its location and extent were both determinable and determined. It was the property which the mother agreed to give to her son if he would take up his abode therein. It was the property in which he took up his abode in compliance with this contract. Moreover he did comply with his contract. That he afterwards left the premises was immaterial, since that was done at his mother's request. The only element of uncertainty in the contract was the time when the mother was to give him the property; but the particular time was not necessarily of the essence of the contract. It was to be some time. It had to be sometime when the mother could perform. Necessarily performance by her could be at no later time than the day of her death. Therefore when she did die—if not before—the son's right to the property became absolute.

The case of *Ross v. Allen*, 45 Kan. 231, 25 Pac. 570, is relied on to uphold the judgment. Superficially the cases are somewhat alike. The names of the state, county and city are wanting in both. In the Ross case, however, the name of the owner or grantor was wanting; here the owner and grantor's name is certain. There the memorandum was signed by a purported agent whose authority was not shown; here it was signed by the party to be charged thereby. There the location of the property was uncertain; here it was the only property owned by the mother and the one in which she reserved a room for herself—the property into which the son and his family moved for the purpose of performing his part of the contract. In the Ross case, the court said:

"It is true that an absolutely accurate description of the property is not required, but the property should be so explicitly described that it will be susceptible of identification by reference to other writings and facts which may be shown to the court. If the designation is so definite that the description given in the memorandum can, with the aid of extrinsic evidence, be applied to the exact property intended to be sold, it is enough." (*Hollis v. Burgess,* 37 Kan. 494.)

In this case, when the evidence was introduced and the findings of fact were made, there was not the slightest uncertainty as to what property was covered by the contract.

In L. R. A. 1918 C, 520, is a note citing many precedents which hold that where the contract shows the place where it is executed, the omission of the name of the city in which the property is located can be supplied by inference. Here the contract was dated at

Lawrence, Kan., and as nothing at variance with such an inference appears, it should be construed to relate to property in that city.

In *Kilday v. Schancupp,* 91 Conn. 29, 30, specific performance was decreed on a contract, viz:

"Derby, Conn., Aug. 5, 1914. Sold to J. Schancupp, No. 38-40 Emmett Avenue three tenement house and lot 50 front by 150 deep, and one empty lot 50 by 150 next to second house for the sum . . . .
(Signed) Mrs. Annie Kilday."

In that case it was argued that the contract was defective because of indefiniteness. The court said:

"In the body of the agreement the locality of Emmett avenue is not given. But the agreement bears date at Derby, Connecticut, and from this the inference of fact follows, in the absence of evidence to the contrary, that the property described in the agreement is located in Derby, Connecticut." (p. 33.)

In *Bush v. Black,* 142 Ga. 157, it was held that a contract headed "Atlanta, Ga., June 7, 1912," and which described the property to be conveyed as "No. 401 Spring known as the Cob Home 50 x 160 more or less," was not so vague and indefinite as to render a petition for specific performance subject to general demurrer. It was held that *"prima facie* the property mentioned in the contract would be treated as in Atlanta, Georgia, in the absence of anything appearing to the contrary; and while the description was carelessly made, it could be applied to its subject matter by proper allegation and proof."

In *Engler v. Garrett,* 100 Md. 387, it was similarly held that "when a contract for the sale of a house does not specify the state or city where it is situated, but does mention the name of the tenant then in possession of it, and its street number and the name of the owner, the agreement is sufficiently definite" to justify specific performance.

To the same effect are *Coates v. Lunt,* 210 Mass. 314, and *Frazier v. Lambert,* 53 Tex. Civ. App. 506.

The L. R. A. note cited above, contains ample authorities to maintain the view that a conveyance of property as a certain number on a certain street having a known system of notation is sufficient. See, also, notes in 36 L. R. A., n. s., 154, and L. R. A. 1916 C, 1127.

In *Hampe v. Sage,* 82 Kan. 728, 731, 109 Pac. 406, the rule laid down in 20 Cyc. 271 was quoted:

"Where it appears from extrinsic evidence that the vendor owns but one parcel of land answering the description in the memorandum, the courts are inclined to uphold a meager description of the property."

Turning to the counter abstract and brief of appellee, there is a citation of errors of which the plaintiff complains. The civil code permits this. (Civ. Code, § 578.) Her first citation of error relates to the overruling of her demurrer to defendant's original answer and cross-petition. No appeal was taken on that ruling within six months, so it cannot be reviewed. (Civ. Code, § 572; *Slimmer v. Rice,* 99 Kan. 99, 160 Pac. 984; *Buzbee v. Morstorf,* 105 Kan. 270, 272, 182 Pac. 644; *Dyer v. Johnson,* 109 Kan. 338, 198 Pac. 944.)

Plaintiff's second complaint relates to the permission given defendant to file an amended answer and cross-petition. That matter was vested in the sound discretion of the trial court. (*Bank v. Badders,* 96 Kan. 533, syl. ¶ 3, 152 Pac. 651; *Croner v. Keefer,* 103 Kan. 204, 205, 173 Pac. 282.) The third and fourth citations of error relate to the admission and exclusive of evidence. Such matters are reviewable only when the aggrieved party has timely filed a motion for a new trial and secured a ruling of the trial court thereon. (Civ. Code, §§ 305-307; *Collins v. Morris,* 97 Kan. 264, 155 Pac. 51; *Harris v. Morrison,* 100 Kan. 157, 163 Pac. 1062.) Plaintiff's fifth and last citation of error is based on the trial court's affirmative ruling on defendant's motion for additional findings of fact. If the evidence justified such additional findings, and we must assume that it did, the denial of such a motion might conceivably have been error; the granting of such motion could not possibly be error.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for defendant.