No. 38,498

OPAL E. CLARK and BERNICE G. MUSSER, *Appellees* v. JOHN P. LARKIN, *Appellant.*

(239 P. 2d 970)

Opinion filed January 26, 1952.

*Harry W. Saums,* of Wichita, argued the cause, and *Lloyd F. Cooper* and *W. Jay Esco,* both of Wichita, were with him on the briefs for the appellant.

*Robert Y. Jones,* of Hutchinson, argued the cause, and *Roy C. Davis, Frank S. Hodge* and *Eugene A. White,* all of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from an order overruling a demurrer to an amended petition in an action for damages for breach of an alleged oral contract for the sale of certain real estate in the city of Hutchinson.

The question is whether a written memorandum (hereinafter set out) is a sufficient compliance with the statute of frauds.

The factual background of the matter, as alleged in the amended petition, is as follows:

Plaintiffs Clark and Musser are residents of Hutchinson and Kansas City, Missouri, respectively. Defendant is a resident of Wichita. For some time prior to March 31, 1950, plaintiffs were the owners of and were in possession of six lots in the city of Hutchinson known as 405 East A, such property being a well-improved tract on a corner of the intersection of Avenue A and Elm Street. Prior to that date they had advertised the property for sale and had placed it in the hands of Scott Clark, husband of one of the plaintiffs, with oral authority to sell. On March 31, 1950, defendant came to Hutchinson for the express purpose of purchasing a residence property, and, through a mutual acquaintance, contacted Scott Clark. Clark and defendant then went to the property, at which time defendant made a careful inspection of the same, including the improvements, and they agreed on a purchase price of $17,000—$1,000 to be paid down, $7,000 to be paid on approval of abstract of title, and the balance of $9,000 to be paid in five years with interest at the rate of five per cent per annum. At the suggestion of defendant he and Clark then went to the latter's office for the purpose of consummating the agreement of purchase and sale. Defendant produced his checkbook on The Security Bank of Blackwell, Oklahoma, and requested Clark to make out a check for the down payment and showing the substance of their agreement. Clark did as requested, and defendant signed the check and delivered it to Clark. This check, including notations on it, a copy of which was attached to the amended petition as an exhibit, is as follows:

"No. 45

BLACKWELL, OKLAHOMA, Mar. 31, 1950

Pay to the Order of.........................Opal E. Clark   $1,000.00

One Thousand & no/100....................................DOLLARS

To apply on 405 East 'A' @ $17,000.00 bal. of $7,000.00 to be paid on approval of abstract & $9,000.00 to be paid in 5 years @ 5 %.

Jno. P. Larkin

To The Security Bank
  Blackwell, Oklahoma."

Plaintiffs, in due course of business, deposited the check, properly endorsed, with a bank in Hutchinson. In the meantime defendant caused payment of the check by the Blackwell bank to be stopped. Upon inquiry as to the reason therefor he advised plaintiffs that due to his wife's request and insistence he was refusing to go through with the deal.

Plaintiffs caused the abstract of title, which showed a good and merchantable title, to be certified to date, and executed and acknowledged a warranty deed conveying the property to defendant, and tendered same, which offer and tender defendant refused. Plaintiffs then advised defendant that they would proceed in good faith to sell the property for the best amount reasonably obtainable and would expect to hold defendant liable for the difference, if any, between the net proceeds from such sale and the sum of $17,000, together with interest. Defendant ignored this notice. Plaintiffs kept the property on the market, advertised it for sale, and subsequently listed it with the Real Estate Board of Hutchinson. As a result, on September 13, 1950, plaintiffs sold the property to one Pickerill for the gross sum of $15,000, upon which they paid the customary real-estate commission of five per cent, leaving a net amount of $14,250. Plaintiff's action is to recover the sum of $2,750, with interest from March 31, 1950.

The real estate in question was the only real estate owned by plaintiffs which was known and described as 405 East A, and was the only tract with that description placed for sale with Scott Clark.

In this court defendant contends, as he did in the court below, that the memorandum (check) is too indefinite and uncertain to take the alleged oral agreement for the sale of the property out of the statute of frauds (G. S. 1949, 33-106), the pertinent portions of which read as follows:

"No action shall be brought whereby to charge a party upon . . . any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such ac-

tion shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith,  .  .  ."

The general rule as to the sufficiency of a written memorandum to meet the requirement of the statute is as follows:

In 49 Am. Jur., Statute of Frauds, it is said:

"Generally speaking, a memorandum in writing meets the requirements of the statute of frauds that certain contracts shall be evidenced by writing if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification." (§ 321, p. 635.)

"A memorandum sufficient to satisfy the requirement of the statute of frauds must be complete in itself as to the parties charged with liability thereunder and the essential terms of the contract. The memorandum cannot rest partly in writing and partly in parol; that is to say, a deficiency in the memorandum cannot be supplied by parol evidence. But parol evidence is admissible to explain ambiguities, and to apply the instrument to the subject matter." (§ 322, p. 636.)

In Restatement, Contracts, § 207, the general rule is stated thusly:

"A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,

(a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

(b) the land, goods or other subject-matter to which the contract relates, and

(c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

On the question whether a check may constitute a sufficient memorandum under the statute see § 332, pp. 643, 644, 49 Am. Jur., *supra,* and the annotation at 153 A. L. R. 1112, to the effect that a check, given in connection with the sale of lands, bearing notations or references to papers or matters which, by the rules of contract and evidence, may properly be deemed a part thereof, and which contains the essential terms of the contract of sale, is sufficient.

Applying the foregoing general rules to the instrument before us, we think that defendant's contentions, if sustained, would lead to a too technical and strained construction of the statute and would defeat the very reason for its enactment.

In the nature of things and in the light of common, everyday business dealings, the check and notations upon it clearly indicate that defendant, as maker, was purchasing from payee, as owner, certain real estate described as "405 East 'A'," for the sum of $17,000; that

the amount of the check ($1,000) was a down payment; that the sum of $7,000 was to be paid upon approval of the abstract of title; and that the balance of $9,000 was to be paid in five years with interest on such latter sum at the rate of five percent. The names of the parties, as payee and maker of the check, are thus designated as seller and purchaser, respectively, with no uncertainty. There is nothing left to conjecture or speculation with respect to the purchase price, the amount being paid down, or as to when the balance of $16,000 was to be paid. To place any other construction on the instrument would do violence to the plain and ordinary meaning of the very language used.

Defendant strenuously argues that the location and identity of the property are not given with reasonable certainty, and that on account of the check being given on a Blackwell, Oklahoma, bank it is logical to assume the property is located in that city. It is true that nowhere on the check and its notation is the location of the property, as to city, county or state, listed.

On the other hand, it is to be remembered that by the allegations of the amended petition the property is specifically described as being located on a corner of the intersection of Avenue A and Elm Street in the city of Hutchinson, known as 405 East A. It is further alleged that it was the only real estate owned by plaintiffs known and described as 405 East A; that it was the only tract with that description placed for sale with Scott Clark, and that defendant personally inspected the same. In *Hampe v. Sage*, 82 Kan. 728, 109 Pac. 406, it was held that where it appears from extrinsic evidence that a vendor owns but one parcel of land answering the description in the memorandum, courts are inclined to uphold a meager description of the property, and further that:

" 'If the designation is so definite that the purchaser knows exactly what he is buying, and the seller knows what he is selling, and the land is so described that the court can, with the aid of extrinsic evidence, apply the description to the exact property intended to be sold, it is enough.' " (p. 733.)

See, also *King v. Stephens*, 113 Kan. 558, 215 Pac. 311; *Wing v. Mollett*, 115 Kan. 116, 222 Pac. 88, and *Nauman v. Powers*, 147 Kan. 641, 78 P. 2d 27, on the general subject matter.

In Comment 9, under subdivision (*b*) of the rule in Restatement, quoted *supra*, we find the following:

"A and B enter into an oral contract for the sale and purchase of land owned by A on the corner of X and Y streets. A memorandum, otherwise sufficient, is signed by A and B, which described the subject-matter of the contract as 'The land on the corner of X and Y Streets.' There are four different lots

at the intersection of those streets. A owns but one of them. The memorandum is sufficient. It is immaterial that neither the State nor the City where the land is situated is named."

In 49 Am. Jur., *supra,* it is said:

"A writing which affords no means by which the property sold can be identified is not a memorandum sufficient to satisfy the statute. Thus, a recital in a check that it is given as payment for land is not a sufficient description of the subject matter of the contract to take the transaction out of the statute of frauds. However, the cases are substantially in agreement on the general proposition that it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter. The terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended, to the exclusion of all other property. . . .

"The circumstances that the seller owns only one tract of land which answers the description given in the memorandum operates to render sufficient a description which under other circumstances might be too general to satisfy the statute." ( § 348, pp. 656, 657, 658. )

"A writing relied upon to constitute the memorandum must in and of itself furnish the evidence that the minds of the parties met as to the particular property which the one proposed to sell and the other agreed to buy; when such evidence is not found in the writing, it cannot be supplied by parol, but if it is found there, parol evidence of extrinsic circumstances may be resorted to for the purpose of specifically designating the property to which both parties are shown to have referred by the terms of the writing." ( § 349, p. 658. )

We think that under the above rules there can be no question but that the description of the property as "405 East A" is sufficient to satisfy the statute. It cannot be said defendant is being in any way misled by the use of that description. He knew exactly the property for which he was bargaining, and that it was the property described by its street address on the check. The statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and courts will, so far as possible, refuse to allow it to be used as a shield to protect fraud and as a means to enable one to take advantage of his own wrong. (*Hazen v. Garey,* 168 Kan. 349, 212 P. 2d 288, and 49 Am. Jur., *supra,* § 578, p. 885.)

Holding as we do, that the memorandum in question is a sufficient compliance with the statute of frauds, the court did not err in overruling the demurrer to the amended petition, and its ruling is therefore affirmed.

SMITH, J., concurs in the result.