No. 47,008

F. J. KUTILEK, *Appellee*, v. UNION NATIONAL BANK OF WICHITA, KANSAS, *Appellant*.

(516 P. 2d 979)

408

Opinion filed December 8, 1973.

*Stan E. Wisdom,* of Jochems, Sargent & Blaes, of Wichita, argued the cause, and *Robert L. Heath,* of the same firm, was with him on the brief for appellant.

*Donald E. Lambdin,* of Lambdin and Kluge, Chartered, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a judgment rendered in an action brought under the Kansas Declaratory Judgment Statute (K. S. A. 60-1701 *et seq.*) to determine the sufficiency of an instrument designated "Guaranty of Payment," to meet the requirements of the statute of frauds (K. S. A. 33-106). The chronology of events giving rise to this appeal follow:

Dr. Frank J. Kutilek, the appellee, and Richard Greene and Leroy J. Beery decided to form a corporation and go into the used car business. Neither Greene nor Beery are parties to this litigation, however, a recital of some of the background information to clarify the issue presented necessitates that reference be made to the three incorporators.

In January, 1970, a corporation, Eagle Auto Sales, Inc., (Eagle), was formed by Kutilek, Greene and Beery. Dr. Kutilek was president of the corporation; Greene was vice president, and Beery was secretary-treasurer. All parties made a pro rata capital contribution, each receiving one-third of the corporate stock. To enable the corporation to obtain loans for operating capital, Dr. Kutilek titled some of his personal automobiles in the corporation's name. At the time Eagle was incorporated, Greene and Beery were operating a used car business known as Greene-Beery Motor Company, Inc. (Greene-Beery). The inventory of Greene-Beery was secured by trust receipts to the appellant, Union National Bank.

Eagle executed the necessary documents to open a bank account with the appellant, and also executed a borrowing resolution to enable the corporation to obtain funds for the purpose of conducting business. Those forms were signed by all the corporate officers on February 16, 1970. Thereafter, the bank advanced Eagle the sums of $8,250 on March 17, 1970, and $3,750 on March 20, 1970. Appellant's executive vice president, E. Richard Goodwin, testified that when those advances were made, the bank was not relying on the personal worth of Dr. Kutilek.

On March 24, 1970, the parties, Kutilek, Greene and Beery, jointly executed in their individual capacity, the instrument in question entitled "Guaranty of Payment," a printed form of the bank. It is unnecessary to quote the instrument in full, since only the first and last paragraphs are pertinent. They read:

"WHEREAS, EAGLE AUTO SALES, INC., hereinafter called Borrower, has applied to Union National Bank of Wichita, Wichita, Kansas, for loans, credit or advances to be made from time to time, including application for a loan at the present time of $_____, such indebtedness to be evidenced by promissory note or notes with terms and interest rates satisfactory to said bank; and"

\* \* \* \* \*

"The total liability of the undersigned under this guaranty shall in no event exceed the aggregate principal sum of $_____."

As will be noted, the instrument has two lines which are blank. Those lines were blank when the instrument was signed by Dr. Kutilek. The record indicates the first blank line on the Guaranty of Payment is to show the loan amount applied for or requested at the time of the instrument's execution. The second blank line is to indicate the total limit of the guarantor's liability.

Thereafter, and on March 30, 1970, a transfer was made of Greene-Beery's inventory to Eagle. The inventory transfer was accomplished by the execution of new trust receipts in the name of Eagle, which were signed by Beery. The net effect of this transaction was a paper transfer of some $96,150 in inventory and trust receipts from Greene-Beery to Eagle.

Sales of automobiles by Eagle were handled primarily by Beery. He also issued the necessary trust receipts on all automobiles financed by Eagle, through the appellant bank. The inventory of automobiles used by Eagle in its business was secured under trust receipts executed in favor of the appellant bank. During the course of Eagle's operations, this trust receipt arrangement between appellant bank and Eagle exceeded the sum of $100,000 on six different occasions.

In December, 1970, Dr. Kutilek discovered several of Eagle's automobiles had been sold, but the proceeds of the sales had not been remitted to the bank. Such activity occasioned a $64,000 loss to the appellant. Realizing that all was not well with Eagle, Dr. Kutilek resigned as an officer and director. On March 19, 1971, he filed an action under the Kansas Declaratory Judgment Statute,

K. S. A. 60-1701, *et seq.*, for a determination as to the validity of the Guaranty of Payment. In his amended petition, Dr. Kutilek alleged the Guaranty of Payment was insufficient to meet the requirements of the statute of frauds (33-106); that it was not completely in writing; that it failed to state the terms and conditions of all of the promises constituting the contract; that it did not state either the amount guaranteed or the amount of the principal obligation, or even describe the principal obligation, and that such agreement was void and unenforceable. In addition, Dr. Kutilek asserted that the usage of the Guaranty of Payment was conditioned upon Eagle obtaining a lease on the property at 1430 Kellogg, and that no notification of acceptance or reliance thereon was ever given by the bank.

The appellant bank answered the Guaranty of Payment complied with the statute of frauds; that Kutilek, being an officer, director, and stockholder of Eagle, was fully advised as to all matters concerning the guaranty, including the amount of the indebtedness for which said document was executed, and that credit would not have been made available without Dr. Kutilek's execution of the Guaranty of Payment.

Regarding those allegations, the district court made findings of fact as follows:

"F. J. Kutilek, plaintiff herein, was advised that the amount of his Guaranty would be One Hundred Thousand Dollars ($100,000.00), and that the said plaintiff executed the Guaranty with the full knowledge that such was the extent of his liability thereunder.

"At the time of the execution of the 'Guaranty of Payment' by F. J. Kutilek, the same was executed by F. J. Kutilek with the understanding on his part that the Guaranty would cover an automobile floor plan for an automobile lot at 1430 East Kellogg, Wichita, Kansas. Such fact was not communicated to the officers of the bank."

The district court concluded as a matter of law:

"1. The Court, after being fully and duly advised in the premises, finds that the 'Guaranty of Payment' dated March 24, 1970, and executed by the plaintiff is a collateral promise and within the Statute of Frauds, K. S. A. 33-106.

"2. The Court further finds that the unfilled blanks within the 'Guaranty of Payment' are material omissions.

"3. The Court further finds that the 'Guaranty of Payment' does not comply with the Statute of Frauds, K. S. A. 33-106, and is not enforceable by the defendant."

The appellant relies upon two alleged errors in the district court's findings of fact and conclusion of law. It is first contended the district court erred in finding the "Guaranty of Payment," dated March 24, 1970, was a collateral promise within our statute of frauds, K. S. A. 33-106. The bank contends the guaranty agreement is a primary obligation of the guarantor, and not a collateral undertaking. The term "collateral promise" appears only in the district court's conclusions of law. That term is synonymous with language in our statute placing "any special promise to answer for the debt, default or miscarriage of another person" within the statute of frauds. (K. S. A. 33-106.)

With respect to this matter, we note the district court's pretrial order contains a stipulation which reads:

"That parties stipulate that the following are the issues of fact and law to be determined by the Court:

"A. Whether the 'Guaranty of Payment' executed by plaintiff on March 24, 1970, complies with the Statute of Frauds, K. S. A. 33-106 under the circumstances of its execution, delivery, and extension of credit to Eagle Auto Sales, Inc.

"B. Whether defendant may prove the figures by parol evidence for insertion in the 'Guaranty of Payment.' "

It has been repeatedly held that where it does not affirmatively appear that a question raised on appeal was presented to and determined by the district court, this court does not consider it on appeal. (*Pacific Indemnity Co. v. Berge*, 205 Kan. 755, 473 P. 2d 48; *Hoppe v. Hoppe*, 181 Kan. 428, 432, 312 P. 2d 215.) For a discussion on the merits of appellant's argument see *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P. 2d 316, Syl. ¶ 3; *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P. 2d 72, 58 A. L. R. 2d 1265, and cases cited.

We now turn to the appellant's contention the district court erred in finding the blank lines in the "Guaranty of Payment" were material omissions. As previously indicated, the instrument signed by appellant contained two blank lines. This court does not agree with the appellant's contention the total amount of liability is not material to the guaranty agreement in question. A guarantor's liability upon an obligation cannot be extended by implication, and he should not be held beyond the precise terms of his contract. (*Failing Co. v. Cardwell Investment Co.*, 190 Kan. 509, 376 P. 2d 892; *Bank v. Bradley*, 61 Kan. 615, 60 Pac. 322, *Dry Goods Co. v. Yearout*, 59 Kan. 684, 54 Pac. 1062.)

In *Failing Co.,* supra, this court stated:

". . . The law views with a jaundice eye any attempt to vary by parol evidence the terms of a written contract. This is particularly true with respect to a written contract of guaranty, inasmuch as the nature of the transaction makes it subject to the statute of frauds. (G. S. 1949, 33-106.) If the language of the contract of guaranty is clear and leaves no doubt as to the parties' intention concerning the measure of the guarantor's liability, the guarantor cannot be held liable in excess of the limitations that the contract language imposes. The character of the credit given in a written guaranty, which is complete in itself, cannot be explained by parole evidence . . ." (l. c. 516, 517.)

In *Walton,* supra, we held:

"To be sufficient as a note or a memorandum under the statute of frauds (K. S. A. 33-106), a writing must be complete in itself, leaving nothing to rest in parol. The general rule that a contract which is not entirely in writing is to be treated as a parol or verbal contract, is applicable in determining whether the contract is within the inhibitions of the statute of frauds." (Syl. ¶ 1.)

It might be stated that *Failing Co.,* supra, announced the rule as to altering an instrument by filling in blanks. The pertinent portion reads:

"Even compensated guarantors are not liable when the original contract on which their undertaking was made is materially changed without their assent. A gratuitous or accommodation guarantor is discharged by any change, material or not, and even if he sustains no injury by the charge, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further. The guarantor is at least entitled to notice of change and the attempt to increase his burden and his chances of loss. (*Magazine D. Pub. Co. v. Shade et al., Aplnts.,* 330 Pa. 487, 490, 199 A. 190, 117 A. L. R. 960.)" (l. c. 516.)

A guarantor is the favorite of the law and we conclude the instrument designated "Guaranty of Payment" lacked the essentials of a note or memorandum under the statute of frauds, and was void and unenforceable.

The judgment is affirmed.